1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

9

| | |
|---|---|
| 10 CEDRIC JACKSON, MARYANNE ATKINS, TORRY LOVE, TRISTAN PASCUA, 11 PATRICK TABLES and all others similarly situated, 12                Plaintiffs, 13     vs. 14 KING COUNTY, a municipal corporation, 15             Defendant. | CLASS ACTION No. COMPLAINT FOR MONETARY DAMAGES |

16

### I.      PRELIMINARY STATEMENT

17

18

     1.1    This class-action civil-rights lawsuit challenges King County's policy and

practice of holding some juveniles in solitary confinement at King County's two jails, the

19

Maleng Regional Justice Center ("RJC") and the King County Correctional Facility ("KCCF")

20

(collectively "jails"). The Parties identified below have engaged in extensive efforts to reach a

21

mutually satisfactory resolution of the events and claims described herein. They have reached a

22

COMPLAINT - Page 1

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA 98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1    settlement and ask the Court to approve the settlement on behalf of a class of people who were

2    injured by King County's actions.

3          1.2     King County confined some juveniles charged as adults in small cells, alone and

4    with minimal meaningful human contact, typically for 22-24 hours a day. King County held

5    youth in these cells for days, weeks, or months on end. These youth, many of whom already had

6    mental health diagnoses, typically had little to nothing to do in their cells for hours on end: no

7    meaningful human interaction, little to no education or programming, no music or television, and

8    very few reading materials.

9          1.3     Even when allowed out of their cells, these youth were generally alone in a day

10   room. It was only during this "out of cell" time that they could shower, use a telephone, or

11   exercise. Any "recreation" they received typically took place alone in an empty, concrete pen.

12         1.4     These youth were held in solitary confinement at the adult jails while they

13   awaited trial on their criminal charges, and they had not been convicted of any crime.

14         1.5     Isolating young people in this way, so that they have minimal to no meaningful

15   social contact, causes trauma, depression, anxiety, psychosis, and increases the risk of suicide

16   and self-harm.

17         1.6     In response to litigation against the County for its solitary confinement practices,

18   the King County Council passed King County Ordinance 18637, effective July 1, 2018, which

19   prohibited the use of solitary confinement against juveniles, except in extremely limited

20   circumstances. Protected people were broadly defined to include individuals over the age of 18

21   who were confined based on charges filed in juvenile court or based on conduct that occurred

22   before the individual's 18th birthday. In spite of this Ordinance, King County continued to use

COMPLAINT - Page 2

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1  solitary confinement against youth protected by the Ordinance.

2      1.7      King County and the Plaintiffs have reached a settlement of the claims arising

3  from these events. As such they ask the Court to certify a class of juveniles charged as adults

4  between 2014-2019 who still had claims that had not expired pursuant to the applicable statute of

5  limitations as of the date(s) the Parties executed a tolling agreement and who were subject to

6  solitary confinement at the Regional Justice Center and/or the King County Correctional Facility

7  while they were under the age of 18 years old; and/or while they were 18 years of age or older,

8  considered juveniles under the definition of King County Ordinance 18637, and they

9  experienced solitary confinement on/after that Ordinance became effective. The parties also ask

10  the Court to approve the settlement that the parties have reached.

11

## II.      JURISDICTION AND VENUE

12

13  2.1      This action arises under the Constitution and laws of the United States and under

the Constitution and laws of the State of Washington. This Court has jurisdiction to adjudicate

14  these claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1334, 28 U.S.C. § 1367 and 42 U.S.C. §

15  1983.

16  2.2      This Court has authority to award compensatory damages pursuant to 42 U.S.C §

17  1983 and as provided pursuant to applicable state laws. This Court has authority to award costs

18  and attorneys' fees under 42 U.S.C. § 1988.

19  2.3      Venue is proper in the United States District Court for the Western District of

20  Washington pursuant to 28 U.S.C. § 1391, because King County is located in this District and

21  the events or omissions giving rise to the claims occurred in this District.

22

COMPLAINT -  Page 3

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

### III.    PARTIES

*Plaintiffs*

3.1    Cedric Jackson is a Washington State resident. Plaintiff Cedric Jackson has been injured by King County's actions as described herein.

3.2    Maryanne Atkins is a Washington State resident. Plaintiff Maryanne Atkins has been injured by King County's actions as described herein.

3.3    Torry Love is a Washington State resident. Plaintiff Torry Love has been injured by King County's actions as described herein.

3.4    Tristan Pascua is a Washington State resident. Plaintiff Tristan Pascua has been injured by King County's actions as described herein.

3.5    Patrick Tables is a Washington State resident. Plaintiff Patrick Tables has been injured by King County's actions as described herein.

*Defendants*

3.6    Defendant King County owns and operates the RJC and the KCCF and is responsible for the unlawful policies, practices, and customs challenged by Plaintiffs.

### IV.    FACTS

4.1    King County operates two jails designed to hold adults, the Maleng Regional Justice Center ("RJC") and the King County Correctional Facility ("KCCF").

4.2    Located in Kent, Washington, the RJC is a courthouse complex and correctional facility. The jail portion of the RJC currently houses adult pre-trial detainees and people serving criminal sentences. In 2019, it had an average daily population of 817 individuals.

4.3    The KCCF, sometimes also called the King County Jail, is in downtown Seattle

COMPLAINT - Page 4

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1    and currently houses adult pre-trial detainees and people serving criminal sentences. In 2019, the

2    KCCF had an average daily population 1159 individuals.

3         4.4     For many years, up until December 2017, the RJC and KCCF also housed

4    children under the age of 18 who had been charged as adults.

5         4.5     As a matter of official policy or practice, King County authorized jail staff to use

6    solitary confinement against these young people who were housed at the KCCF and the RJC. For

7    purposes of this litigation, "solitary confinement" or "isolation" are defined as being confined in

8    isolation without meaningful human contact, regardless of the reason for such isolation.

9    Meaningful human contact is defined as the opportunity for more than 2 hours of time per day,

10   out of their cell or room, and around other confined individuals.

11        4.6     King County ended the practice of holding juveniles charged as adults in the RJC

12   and KCCF in December 2017, in response to litigation filed against it. King County nevertheless

13   continued to transfer youth charged as adults from juvenile facilities to the adult facilities,

14   immediately upon their 18th birthdays. Many of these youth were subject to King County

15   Ordinance #18637 which prohibited the use of solitary confinement against them, once the

16   Ordinance became effective on July 1, 2018.

17        4.7     King County held many of these people in its jails in isolation, alone in their cells,

18   for long periods of time.

19        4.8     Generally, though they had not been convicted of the charged crime, the people

20   held pre-trial at the jails did not have the financial means to afford bail that would allow them to

21   leave jail pending the dispositions of their cases.

22        4.9     The vast majority of people King County held come from families experiencing

COMPLAINT - Page 5

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1   severe poverty. Many who arrived at the jails have experienced homelessness prior to their

2   incarcerations. Many have mental or physical disabilities. Many have suffered physical,

3   emotional or sexual abuse in their pasts. Many were fighting addictions to drugs or alcohol.

4   Many come from families that have suffered serious disruptions and social dislocation. Many

5   have suffered psychological injuries from being taken from their families as children by the State

6   and placed in Washington's foster care system. The individuals that the jails house are

7   disproportionately people of color.

8         4.10    A typical cell where youth were held in solitary confinement is small and contains

9   a stainless steel toilet, a sink, a mattress, and an overhead fluorescent light. The cell floors and

10   walls are concrete. The cell door is solid with narrow Plexiglas windows. A "pass through" slot

11   allows correctional officers to pass meals to the people locked inside. The cells have no phones,

12   radios, or televisions.

13         4.11    While in solitary confinement, individuals typically received less than 2 hours out

14   of their cells. This time out of their cells was typically spent alone in a day room or recreation

15   yard. At times, King County did not allow juveniles out of their solitary cells on Mondays,

16   Wednesdays, Fridays or Saturdays. On occasion, juveniles were allowed out of their cells for

17   only 15 minutes.

18         4.12    King County isolated people in order to punish them for minor misbehaviors, as a

19   tool to address housing issues, and for administrative convenience. Decisions on isolation as

20   punishment were often arbitrary and based on minor misbehaviors that are common for many

21   youth or people experiencing mental illness, and common particularly for people who have been

22   confined alone in a cell with nothing to do for days or weeks on end. People were placed in

COMPLAINT -  Page 6

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1  solitary for failing to meet dress code rules, mouthing off to correctional officers, or refusing to

2  quiet down. Annoying the staff, being loud, or other minor misbehaviors could result in long

3  stretches of solitary confinement.

4      4.13    Once a person was placed in solitary confinement, correctional officers regularly

5  took all or some of the person's "out of cell time" for alleged transgressions of jail rules,

6  meaning that people remain alone in their cells for days at a time without being allowed out.

7      4.14    People locked in King County's solitary confinement cells had little to no

8  meaningful human interaction. "Recreation" consisted of being placed alone in a small, barren

9  box with a concrete floor, concrete walls and little else. People in solitary confinement could not

10  participate in any group recreational activities, such as basketball, cards or chess. They ate their

11  meals alone in their cells. Their time out was the only time when they can go outside to the rec

12  yard, use the telephone or take a shower. But they were alone, even in the rec yard.

13      4.15    King County has a special relationship with the people under their care. As a

14  result of this special relationship, King County has a duty to protect and maintain the health,

15  safety and welfare of all the people held in the jails.

16      4.16    King County has acknowledged that solitary confinement harms people and has

17  been informed about the injuries it is causing people by isolating them. In fact, one of King

18  County's policies regarding the use of solitary confinement at the jails stated that an "Inmate-

19  patient[] under the age of 19" is a "contraindication" for the use of solitary confinement.

20      4.17    King County also operates a juvenile detention facility on First Hill in Seattle that

21  houses people under the age of 18. By policy and practice, King County does not utilize solitary

22  confinement or deadlock against people held at the juvenile detention facility, and has not used it

COMPLAINT - Page 7

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1   since the 1990s.

2       4.18    Nonetheless, King County's use of solitary confinement inflicted serious harm on

3   the plaintiffs and all class members and exposed them to a substantial risk of serious harm.

4       4.19    King County did not provide the correctional officers who supervised the people

5   at the jails with appropriate training on how to manage young people, unlike the staff at the

6   juvenile detention facility. King County did not properly supervise the jail staff to ensure that

7   they did not engage in illegal and harmful practices as described herein. King County did not

8   promulgate appropriate policies and procedures governing the management of people at the jails.

9       4.20    King County allowed correctional officers to take people's out of cell time

10  arbitrarily and without justification. King County approved of the use of long-term isolation and

11  deadlock against people.

12      4.21    King County's use of solitary confinement caused plaintiffs and class members to

13  suffer from suicidal ideation or intent, anxiety, depressive symptoms, post-traumatic symptoms,

14  and worsening behavior. Some were unable to sleep at night because of the anxiety and

15  depression caused by being isolated for days at a time.  People experienced physical symptoms,

16  like stomach- and headaches, related to the stress and boredom of long-term isolation.

17      4.22    People threatened suicide as a consequence of being isolated for so long. When

18  people in solitary confinement became suicidal, King County would briefly move them to

19  suicide watch, another form of isolation, before immediately placing them back in extreme

20  solitary confinement with no continued mental health treatment.

21      4.23    Because of the stress caused by long-time isolation, some people agreed to accept

22  plea deals in order to get out of isolation and into a different facility.

COMPLAINT - Page 8

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

4.24 Young people are especially susceptible to serious physical and psychological harm when they are isolated from other people because they are still developing psychologically, neurologically, and socially.

4.25 The severe physical or psychological trauma brought on by isolation can cause permanent changes in the brain and increase the risk of developing permanent psychiatric conditions. Solitary confinement can cause or exacerbate chronic conditions like depression. Isolating people can also bring on paranoia, anger, and mistrust of authority figures.

4.26 Medical research on the brains of young people explains why youth are more vulnerable to the harms caused by solitary confinement. In the youthful brain, the connections between the frontal lobe and the mid-brain have not fully developed. Solitary confinement has been shown to cause damage to neurological structures in the brain and other physical injuries and may shrink parts of the brain associated with memory.

4.27 Solitary confinement caused all of the plaintiffs serious and debilitating physical injuries and psychological harm.

## V. FACTS REGARDING INDIVIDUAL PLAINTIFFS

### CEDRIC JACKSON

5.1 Plaintiff Cedric Jackson is a 22 year old, African-American person.

5.2 Cedric was confined at the RJC as a 17 and 18 year old youth from January 2016-February 2017 while he awaited trial. Cedric was charged as an adult and housed at the adult jail when he was a child, pursuant to provisions of Washington's auto-decline law, contained at RCW 13.04.030.

5.3 Cedric was first moved to a solitary confinement cell as a 17 year old, in January

COMPLAINT - Page 9

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA 98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1  2016. In total, Cedric was held in solitary confinement for over 100 days while at the RJC.

2       5.4    In June 2016, Cedric was held in solitary confinement for over twenty

3  consecutive days.  Two months later, in August 2016, Cedric was again subject to disciplinary

4  solitary. He was infracted for allegedly speaking too loudly in his unit and taken to solitary

5  confinement as a result. Although Cedric was scheduled to serve 10 days of disciplinary solitary,

6  jail staff kept him locked in solitary confinement for about two months, for administrative

7  reasons, until November 3, 2016. Cedric was held in solitary confinement at other times during

8  his incarceration at the RJC.

9       5.5    While held in solitary confinement, Cedric typically remained locked in the same

10  cell, alone, with an hour or less out per day. When he came out his cell, Cedric was alone in a

11  dayroom. Cedric was frequently only allowed out of his cell on Tuesdays, Thursdays, and

12  Sundays, for an hour or less. At times, his out of cell time was limited to only once or twice per

13  week.

14       5.6    Cedric had little to nothing to do in his cell for hours on end: no meaningful

15  human interaction, little to no education or programming, no music or television, and very few

16  reading materials.

17       5.7    After one 12 day stretch in solitary confinement, Cedric reported to a nurse at the

18  RJC that he was having anxiety and nightmares, symptoms which the nurse noted in his records

19  were "suggestive of panic attacks." Cedric was seen by Jail Psychiatric staff and was diagnosed

20  with PTSD and anxiety, and placed on medication.

21       5.8    King County was aware that Cedric's young age and mental health issues would

22  place him at particular harm from solitary confinement. King County nevertheless subjected him

COMPLAINT -  Page 10

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1  to repeat instances of solitary confinement. In fact, by holding Cedric in solitary confinement as

2  described herein the defendants violated their own King County Jail Health Services policy

3  which states that mental health conditions and being under the age of 19 medically

4  contraindicated someone from being placed in solitary confinement.

5        5.9     On at least one occasion, King County Jail Health Services explicitly notified jail

6  staff that Cedric had a contraindication to being housed in solitary, commenting

7  "contraindication to Age:Inmate-patients under the age of 19." Nonetheless, jail staff disregarded

8  this notification and Cedric was subject to solitary confinement for many more days.

9        5.10    During these extended periods of solitary confinement, in spite of the fact that the

10  defendants knew Cedric had mental health issues and was contraindicated for solitary

11  confinement due to his age, the defendants provided him with no regular, on-going or

12  meaningful mental health evaluations and treatment.

13       5.11    Cedric suffered serious and severe physical, psychological and emotional harm

14  and distress from these repeated and lengthy instances of solitary confinement.

15       ***MARYANNE ATKINS***

16       5.12    Plaintiff Maryanne Atkins is a 21 year old white person.

17       5.13    Maryanne was confined in King County's adult facilities while awaiting trial on

18  an adult charge from April 18, 2016 to June 1, 2016 as a 16 year old and then again between

19  January 12, 2018 and March 28, 2019 after she turned 18. Maryanne was charged as an adult and

20  housed at the adult jails when she was a child, pursuant to provisions of Washington's auto-

21  decline law, contained at RCW 13.04.030.

22       5.14    Maryanne was held in solitary confinement as a 16 year old for long periods of

COMPLAINT - Page 11

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1   time. She was held in solitary confinement because there were no other female juveniles at the

2   RJC for most of her confinement.

3        5.15    Maryanne became suicidal while being held in solitary confinement. RJC staff

4   moved her to the infirmary for suicide watch where she was again placed in solitary

5   confinement. Immediately after her suicide watch ended, Maryanne was placed back in solitary

6   confinement. Maryanne remained in solitary confinement until she was transferred to the

7   juvenile detention facility on June 1, 2016.

8        5.16    While held in solitary confinement, Maryanne typically remained locked in the

9   same cell, alone, with an hour or less out per day. She was generally alone during anytime spent

10  out of her cell. While held in solitary confinement, Maryanne would often not be allowed out of

11  her cell at all for days on end. As described generally above, Maryanne had little to nothing to do

12  in her cell for hours on end: no meaningful human interaction, little to no education or

13  programming, no music or television, and very few reading materials.

14       5.17    Because of her extreme isolation and the damage it was causing her, her medical

15  records from that time note that she was suffering from PTSD and depression and that "all

16  symptoms [are] likely exacerbated by her current isolation in the infirmary."

17       5.18    After serving a couple more years in King County's juvenile detention facility,

18  King County transferred her back to the KCCF on her 18th birthday on January 12, 2018. She

19  remained there until March 28, 2019.

20       5.19    She was again held in solitary confinement for periods of time during this second

21  period of detention in King County's adult facilities, in violation of King County Ordinance

22  18637. Maryanne served more than 45 days in solitary confinement, both before the age of 18

COMPLAINT - Page 12

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1   and after the age of 18, in violation of King County Ordinance 18637.

2      5.20    During these extended periods of solitary confinement, in spite of the fact that the

3   the defendants knew Maryanne had mental health issues and was contraindicated for solitary

4   confinement due to her age, the defendants provided her with no meaningful mental health

5   evaluations and treatment.

6      5.21    Maryanne suffered serious and severe physical, psychological and emotional

7   harm and distress from these repeated and lengthy instances of solitary confinement.

8      ***TORRY LOVE***

9      5.22    Plaintiff Torry Love is a 21 year old African American person.

10     5.23    Torry was confined at the RJC as a 16-17 year old from January 29, 2016-

11  September 22, 2017 while he awaited trial. Torry was charged as an adult and housed at the adult

12  jail when he was a child, pursuant to provisions of Washington's auto-decline law, contained at

13  RCW 13.04.030. Torry spent more than 55 days total in solitary during this period of detention.

14     5.24    During his time in solitary confinement, Torry was confined to a small cell, alone.

15  He generally received one hour or less out per day. He was generally alone during anytime spent

16  out of her cell.

17     5.25    As described generally above, Torry had little to nothing to do in his cell for hours

18  on end: no meaningful human interaction, little to no education or programming, no music or

19  television, and very few reading materials.

20     5.26    The defendants were aware that Torry's young age would place him at particular

21  harm from solitary confinement. The defendants nevertheless subjected him to repeated instances

22  of solitary confinement. In fact, by holding Torry in solitary confinement as described herein the

COMPLAINT - Page 13

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1   defendants violated their own King County Jail Health Services policy which states that mental

2   health conditions and being under the age of 19 medically contraindicated someone from being

3   placed in solitary confinement.

4        5.27    During these extended periods of solitary confinement, the defendants provided

5   him with no regular, on-going or meaningful mental health evaluations and treatment.

6        5.28    Torry suffered serious and severe physical, psychological and emotional harm and

7   distress from these repeated and lengthy instances of solitary confinement.

8   **_TRISTAN PASCUA_**

9        5.29    Plaintiff Tristan Pascua is a 21 year old Asian American person.

10        5.30    Tristan was confined at the RJC as a 16 to 17-year-old juvenile from May 22,

11   2017 to November 9, 2017 while awaiting trial. Tristan was charged as an adult and housed at

12   the adult jail when he was a child, pursuant to provisions of Washington's auto-decline law,

13   contained at RCW 13.04.030. Tristan spent over 75 days of this 172-day period in some form of

14   solitary confinement. Tristan was released from custody when his case was ultimately re-filed in

15   juvenile court. Tristan was at times only allowed out of his cell on Tuesdays, Thursdays, and

16   Sundays, for an hour or less. At times, his out of cell time was limited to only once or twice per

17   week.

18        5.31    During his time in solitary confinement, Tristan was confined to a small cell,

19   alone. He received one hour or less out per day. He was generally alone during any time spent

20   out of her cell. Tristan had little to nothing to do in his cell for hours on end: no meaningful

21   human interaction, little to no education or programming, no music or television, and very few

22   reading materials.

COMPLAINT -  Page 14

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1    5.32    King County was aware that Tristan's young age would place him at particular

2    harm from solitary confinement. King County nevertheless subjected him to repeat instances of

3    solitary confinement. By holding Tristan in solitary confinement as described herein the

4    defendants violated their own King County Jail Health Services policy which states that mental

5    health conditions and being under the age of 19 medically contraindicated someone from being

6    placed in solitary confinement.

7    5.33    During these extended periods of solitary confinement, in spite of the fact that the

8    the defendants knew Tristan was contraindicated for solitary confinement due to his age, the

9    defendants provided him with no regular, on-going or meaningful mental health evaluations and

10    treatment.

11    5.34    Tristan suffered serious and severe physical, psychological and emotional harm

12    and distress from these repeated and lengthy instances of solitary confinement.

13    ***PATRICK TABLES***

14    5.35    Plaintiff Patrick Tables is a 22 year old African American person.

15    5.36    Patrick was confined at the RJC and KCCF as a 16 to 17-year-old from November

16    24, 2015 to July 21, 2016. His case was ultimately resolved as a juvenile matter, and he was

17    transferred out of adult jail and to King County's juvenile detention facility on July 21, 2016.

18    5.37    Patrick spent at least 194 days of this 240 day period in solitary confinement. He

19    was held for an unbroken period of solitary confinement from January 8, 2016 until July 21,

20    2016.

21    5.38    During this stretch King County officials placed him on suicide watch in a

22    solitary confinement cell on at least two separate occasions. Though concerned that he might be

COMPLAINT - Page 15

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1   suicidal, King County did not end his solitary confinement after either event.

2       5.39   While held in solitary confinement, Patrick typically remained locked in the same

3   cell, alone, with an hour or less out per day. He was generally alone during anytime spent out of

4   his cell. As described generally above, Patrick had little to nothing to do in his cell for hours on

5   end: no meaningful human interaction, little to no education or programming, no music or

6   television, and very few reading materials.

7       5.40   The defendants were aware that Patrick's young age and mental health issues

8   would place him at particular harm from solitary confinement. The defendants nevertheless

9   subjected him to repeat instances of solitary confinement. In fact, by holding Patrick in solitary

10   confinement as described herein the defendants violated their own King County Jail Health

11   Services policy which states that mental health conditions and being under the age of 19

12   medically contraindicated someone from being placed in solitary confinement.

13       5.41   During these extended periods of solitary confinement, in spite of the fact that the

14   the defendants knew Patrick had mental health issues and was contraindicated for solitary

15   confinement due to his age, the defendants provided him with no regular, on-going or

16   meaningful mental health evaluations and treatment.

17       5.42   Patrick suffered serious and severe physical, psychological and emotional harm

18   and distress from these repeated and lengthy instances of solitary confinement.

19   **VI.   CLASS ALLEGATIONS**

20       6.1   Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a) and

21   Rule 23(b)(3), and seek to represent one class to be defined as follows:

22

COMPLAINT - Page 16

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

Juveniles charged as adults between 2014-2019 who still had claims that had not expired pursuant to the applicable statute of limitations as of the date(s) the Parties executed a tolling agreement and who were subject to solitary confinement at the Regional Justice Center and/or the King County Correctional Facility while they were:

1.  Under the age of 18 years old; and/or while they were
2.  18 years of age or older, considered "juveniles" under the definition of King County Ordinance 18637, and the solitary confinement was on and/or after that Ordinance's July 1, 2018 effective date.

6.2     All members of the class suffered physical harm and serious and severe physical, psychological and emotional harm and distress as a result of the defendants' use of solitary confinement as described herein.

6.3     The facts and claims meet the requirements of CR 23 (a).

6.4     *Numerosity*: Joinder of all members is impracticable because of the size of the class and the characteristics of the class. Upon information and belief, the class includes up to 79 individuals.

6.5     *Commonality*: There are questions of law and fact common to all members of the proposed class.

6.6     Common issues shared include but are not limited to: whether defendants' use of solitary confinement against people under the age of 18 caused substantial and serious harm and whether defendants' actions violated rights guaranteed by the United States Constitution and Washington's Constitution and laws.

6.7     Other common issues shared include but are not limited to: whether defendants' use of solitary confinement in violation of King County Ordinance 18637 caused substantial and serious harm and  whether defendants' actions violated rights guaranteed by the United States

COMPLAINT -  Page 17

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1  Constitution, Washington's Constitution and laws and King County Ordinance 18637.

2     6.8     *Typicality*: As detailed above, the claims of the named Plaintiffs are typical of

3  those of the class.

4     6.9     *Adequacy of Representation*: The named Plaintiffs, their representatives, and class

5  counsel will fairly and adequately represent the interests of the classes. The named Plaintiffs and

6  their representatives have no interests in this matter that are antagonistic to other class members.

7  Class counsel have many years of experience in civil rights and class action litigation.

8     6.10    The Plaintiffs seek to certify this class for monetary damages purposes pursuant to

9  CR 23(b)(3) because:

10    6.11    Questions of law and fact common to the class predominates over any questions

11 affecting only individual members and a class action is superior to any other available methods.

12    6.12    Individual members have an interest in having their claims all heard

13 simultaneously and in mutual resolutions. It is appropriate to have one court consider all of the

14 claims simultaneously because they arise out of similar facts and share common issues of fact

15 and law. Resolving all similar claims in one case is much more efficient and less costly to the

16 plaintiffs and the defendants than resolving each individual, yet similar claim separately. The

17 defendants have injured all members of the class through their use of solitary confinement. The

18 application of this common policy or practice is common to the class.

19            **VII.    PARTIES' SETTLEMENT OF CLAIMS**

20    7.1     The parties engaged in extensive negotiations and informal discovery prior to

21 initiation of this action. They utilized the assistance of a mediator, former King County Superior

22 Court Judge Parris Kallas on a number of occasions. They traded a number of proposed

COMPLAINT - Page 18

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

1   settlement offers during repeated rounds of negotiations.

2         7.2    King County provided plaintiffs' counsel with relevant documents from which the

3   parties could determine the identity of people who had been subject to the conditions described

4   in this complaint and the length of time in which most were held in solitary confinement. The

5   parties have shared calculations of days of solitary confinement based upon their review of these

6   records and conversations with impacted class members.

7         7.3    As a result of these extensive efforts, the parties have reached a settlement of all

8   claims arising from the events described herein.

9         7.4    Because this settlement seeks to resolve the claims for absent class members, the

10  parties must seek this Court's approval of that settlement. The parties will provide notice to all

11  prospective class members once this Court grants preliminary approval of the class settlement

12  and settlement procedure. As required under Fed. R. Civ. P. 23, all prospective class members

13  will have the opportunity to object to the settlement should they wish to and opt out of the class.

14        7.5    The parties have entered into a series of agreements that have tolled relevant

15  statute of limitations for prospective class members.

## VIII.   CLAIMS FOR RELIEF

17        8.1    **First Claim**: By isolating people in the conditions described above and in

18  violation of their own policies and laws, defendants acted under color of state law and violated

19  rights guaranteed the plaintiffs and the members of the Class by the Eighth Amendment and

20  Fourteenth Amendment of the United States Constitution, which are actionable pursuant to 42

21  U.S.C. § 1983.

22        8.2    **Second Claim**: By isolating people in the conditions described above and in

COMPLAINT - Page 19

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-08 (phone); (206) 382-3386 (fax)

violation of their own policies and laws, the defendants violated their duty to protect and maintain the health, safety and welfare of the plaintiffs and the members of the Class.

8.3     **Third Claim**: By isolating the members of the Class in the conditions described above and in violation of their own policies and laws, defendants violated rights guaranteed the plaintiffs and members of the Class by the Fourteenth Amendment of the United States Constitution, by Article I, section 14 and Article I, section 3 of Washington's Constitution and King County Ordinance 18637.

## IX.     RELIEF REQUESTED

The Plaintiffs respectfully request that this Court:

9.1     Certify this action as a class action and certify the proposed Class pursuant to Fed. R. Civ. P. 23(b)(3).

9.2     Approve the proposed settlement that the parties have reached.

9.3     Award the plaintiffs and the members of the proposed Class their reasonable attorneys' fees and costs as agreed by the parties.

Respectfully submitted this 26th day of July, 2021.

COLUMBIA LEGAL SERVICES
Attorneys for Plaintiffs

s/ Nicholas B. Straley
NICHOLAS B. STRALEY, WSBA #25963
Nick.Straley@columbialegal.org
ALISON BILOW, WSBA #49823
Alison.Bilow@columbialegal.org
101 Yesler Way, Suite 300
Seattle, WA 98104
(206) 464-0838 – phone; (206) 382-3386 – fax

COMPLAINT -  Page 20