UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CEDRIC JACKSON et al., <br><br> Plaintiff, <br> v. <br><br> KING COUNTY, <br><br> Defendant. | CASE NO. 21-CV-00995-LK-BAT <br><br> ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEY FEES, AND COSTS |

Plaintiffs move, unopposed, for final approval of the parties' Settlement Agreement and associated attorney fees and costs. Dkt. No. 19; Dkt. No. 23. Having reviewed the parties' filings, supporting documents, and declarations, and upon consideration of counsel's arguments and the statements of Class Members at the final approval hearing, the Court grants final approval of the Settlement Agreement and makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1. Plaintiffs initiated this action on July 26, 2021, challenging King County's use of solitary confinement on juvenile detainees at two adult facilities, Maleng Regional Justice Center

ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEY FEES, AND COSTS - 1

and King County Correctional Facility. Dkt. No. 1 at 1. Plaintiffs filed the complaint in federal district court pursuant to the terms of the parties' July 22, 2021 Settlement Agreement. Dkt. 1-1 at 6.

2.  Under the Settlement Agreement, King County will pay each Class Member $500 per Compensable Day, which the parties define as a 24-hour period of "solitary confinement or . . . isolation without meaningful human contact, regardless of the reason for such confinement." Dkt. No. 7-1 at 4–6. Class Members will receive prorated amounts for fractions of Compensable Days. *Id*. at 6.

3.  Plaintiffs consist of 76 Class Members with a total of 2,715.33 Compensable Days. Dkt. No. 23 at 1; Dkt. No. 24-1 at 3. The Class stands to receive $1,357,665. *Id*.

4.  Under the Settlement Agreement, King County will also pay Class Counsel $50,000 in reasonable attorney fees and costs. Dkt. No. 7-1 at 7.

5.  The total settlement amount is therefore $1,407,665. Dkt. No. 23 at 6.

6.  On August 6, 2021, Plaintiffs moved to certify the settlement class and sought preliminary approval of the Settlement Agreement. Dkt. No. 6.

7.  On August 11, 2021, the Court granted preliminary approval of the Settlement Agreement, approved the form and manner of notice to Class Members, and certified the following Rule 23(b)(3) class for settlement purposes:

> Juveniles charged as adults between 2014-2019 who still had claims that had not expired pursuant to the applicable statute of limitations as of the date(s) the Parties executed a tolling agreement (as further described below) and who were subject to solitary confinement/restrictive housing at the Maleng Regional Justice Center and/or the King County Correctional Facility as of July 23, 2021, while they were:
>
> 1. Under the age of 18 years old;
>
>    and/or

ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEY FEES, AND COSTS - 2

> 2. while they were 18 years of age or older, considered "juveniles" under the definition of King County Ordinance 18637, and the solitary confinement was on and/or after that Ordinance's July 1, 2018 effective date.
>
> "Juveniles charged as adults" is defined to be those individuals charged with crimes under Washington laws governing the automatic or discretionary decline of juvenile court jurisdiction, which are contained at RCW 13.04.030 and RCW 13.40.110.
>
> The Class is limited to those individuals whose statute of limitations had not yet expired at the time of the Parties' Statute of Limitations tolling agreement, which tolled claims of class members during the course of negotiations. The Parties' Statute of [L]imitations tolling agreement was initially signed on September 24, 2019 to toll the statute of limitations for individuals in the class who were subject to solitary confinement/restrictive housing between September 24, 2016-2019, and later amended on November 26, 2019 to also cover those individuals in the class who were subject to solitary confinement/restrictive housing before September 24, 2016 and whose claim[s] had not expired pursuant to the applicable statute of limitations as of the November 26, 2019 amended tolling agreement signing date.

Dkt. No. 11 at 2–3.

8. Pursuant to the Court's order granting preliminary approval, Class Counsel provided individual notice complying with Federal Rule of Civil Procedure 23(c)(2) and (e)(1) to all identified Class Members. Dkt Nos. 7-4, 7-5; Dkt. No. 24 at 2–3; Dkt. Nos. 24-2, 24-3.

9. On January 11, 2022, the Court held a fairness hearing under Federal Rule of Civil Procedure 23(e)(2). *See* Dkt. No. 16 at 2; Dkt. No. 26.

10. Eleven Class Members attended the hearing via Zoom or telephonically. Although two Class Members submitted timely requests to attend and speak at the hearing, Dkt. No. 23 at 25; Dkt. No. 24 at 5; Dkt. No. 24-5 at 2–3, neither objected to the settlement. In response to the Court's questioning, both indicated that they believe the settlement is fair and adequate. These individuals wished to emphasize the trauma they endured while in solitary confinement, as well as the long-term impacts of that trauma on their mental health.

11. A third individual submitted a timely objection detailing why he should have been

included in the Class. Dkt. No. 23 at 15; Dkt. No. 24 at 6; Dkt No. 24-6. This individual voiced his concerns at the hearing. Class Counsel explained why the individual did not qualify as a Class Member, and the individual indicated that he understood Class Counsel's explanation.

12. The Court has considered the statements of the two Class Members and the objection of the excluded individual in rendering its decision. The Court agrees with Class Counsel that the excluded individual does not qualify as a Class Member. *See* Dkt. 23 at 25–27; *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (district courts "must give 'a reasoned response' to all non-frivolous objections[.]'" (quoting *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982))).

13. No Class Members objected to or opted out of the Settlement Agreement. Dkt. No. 24 at 5.

14. The Court thoroughly reviewed the terms of the pre-certification settlement, including the attorney fee arrangement, with heightened scrutiny and finds no evidence of collusion, self-interest, or unfairness to the Class. *See Briseño v. Henderson,* 998 F.3d 1014, 1022–26 (9th Cir. 2021); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

15. The Court finds that the Settlement Agreement meets Federal Rule of Civil Procedure 23(e)(2)'s requirements and is therefore "fair, reasonable, and adequate."

16. Specifically, the Court finds that the Class Representatives and Class Counsel adequately represented the Class. Fed. R. Civ. P. 23(e)(2)(A). Class Counsel have extensive experience litigating class actions and other complex issues involving conditions of confinement—specifically, solitary confinement—in Washington's prisons and jails. Dkt. No. 7 at 2–3. Here, they spent approximately 1,205 hours representing the Class, which entailed nearly two years of investigation; reviewing records; identifying, locating, and contacting potential

Class Members; and negotiating settlement terms. Dkt. No. 7 at 9–13; Dkt. No. 23 at 17.

17. The Class Representatives are comprised of plaintiffs who spent a significant number of days in solitary confinement. Dkt. No. 29 at 2. None, however, received an undue or unfair advantage in compensation compared to the remainder of the Class. And none received a service award.

18. The Court finds that the Settlement Agreement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). The parties reached an agreement after nearly two years of adversarial negotiations, informal discovery, and extensive investigation. Dkt. No. 7 at 6–13; Dkt. No. 23 at 17–18. These negotiations included three and a half days of mediation (September 24, 2020; October 9, 2020; May 26, 2021; and July 23, 2021) before an experienced third-party neutral, retired Superior Court Judge Paris K. Kallas, who had mediated negotiations during the precursor *C.S. v. King County* litigation. Dkt. No. 7 at 7, 11–12; Dkt. No. 23 at 17–18.

19. The Court finds that the relief provided to the class members is adequate. Fed. R. Civ. P. 23(e)(2)(C). The Compensable Day amount of $500 falls "in the middle range of compensation negotiated in other similar cases" and is "much higher than some settlements . . . [yet] lower than others." Dkt. No. 7 at 14; *see also id.* at 16–17. As previously noted, Class Counsel represented the plaintiffs in *C.S. v. King County*, as well as other similarly situated juvenile plaintiffs in another out-of-court settlement. *Id*. at 17. Those settlements "amounted to roughly $450-$500 per day in solitary confinement." *Id*. True enough, there are other single-plaintiff cases involving solitary confinement with "much larger" settlements than the one at hand. *See id*. (cataloguing several New Mexico cases). But as Class Counsel explained in their briefing and reiterated at the fairness hearing, those cases involved "unique claims of extreme and outrageous conditions of confinement," including severe physical injuries, malnutrition, denial of medications, inadequate restroom facilities, no dental care, and bedsores—harms that

Plaintiffs have not alleged in this case. *Id*. at 18.

20. This settlement involves an inherently unquantifiable harm. Class Counsel fashioned a common remedy that reasonably accounts for a myriad of factors too numerous to catalogue, including Compensable Day counts spread across or compacted within different timeframes; juvenile detainees with preexisting mental health issues that differ in kind and degree; gender dynamics; and poor jail records. The settlement amount of $500 per Compensable Day provides greater compensation to those who spent more time in solitary confinement and is a reasonable approach to assigning values to the varying numbers of days that Class Members spent in solitary confinement. The Court accordingly finds that while $500 in many ways remains an uncertain number, it is adequate and fair.

21. The Court finds that the relief provided for the Class is adequate considering the costs, risks, and delay of trial and appeal. Fed. R. Civ. P. 23(e)(2)(C)(i). Although Class Counsel is confident that Plaintiffs' claims are strong, they nonetheless concede that the claims involve unresolved or unsettled complex legal issues. Dkt. No. 7 at 18. For one, no controlling statute or caselaw per se prohibits solitary confinement of juveniles. *See, e.g.*, King County Code § 2.65.020 (prohibiting the use of solitary confinement on juveniles unless "necessary to prevent imminent and significant physical harm to the juvenile detained or others and less restrictive alternatives were unsuccessful.").

22. It is similarly unclear whether Ordinance 18637 provides an implied right of action. Dkt. No. 7 at 18.

23. Plaintiffs' claims would have had to survive qualified immunity, which protects government officials from civil liability where, perhaps as here, "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As the Supreme Court has repeatedly

noted, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law[,]'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)), and forecloses recovery unless "existing precedent . . . place[s] the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

24.     Under the Prison Litigation Reform Act, Plaintiffs would have had to exhaust all available administrative remedies before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.").

25.     These uncertainties, coupled with the standard delays and expenses of litigation through appeal to final resolution, left Class Counsel reasonably fearful of the "many years" that this case might otherwise span. Dkt. No. 7 at 18.

26.     The Settlement Agreement assuaged another fatal risk: the applicable three-year statute of limitations under Washington law. *See* Wash. Rev. Code § 4.16.080(2); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). Many Class Members' claims were set to expire when the parties executed their tolling agreements. Dkt. No. 7 at 19. These Class Members, especially those who remain incarcerated, lacked the necessary resources to have otherwise timely located and hired private counsel. *Id*.

27.     The Settlement Agreement benefits those Class Members with only a few Compensable Days or, in some instances, less than a full day. *Id*. *See* Dkt. No. 29. Roughly half of the 76 Class Members have less than 10 Compensable Days, meaning they each stand to collect less than $5,000. *See* Dkt. No. 29 at 3. Nearly one-third of the Class (25 Class Members) will receive $800 or less. *See id*. As Class Counsel notes, the cost of litigating these "smaller" claims piecemeal would be prohibitively expensive. Dkt. No. 7 at 19.

ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEY FEES, AND COSTS - 7

28.     The Court finds that the relief provided for the Class is adequate considering the effectiveness of the proposed method of distributing relief to the Class, including the method of processing Class Member claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). Each Class Member will receive a share of the total settlement fund based on the amount of Compensable Days calculated for him or her. Dkt. No. 7-1 at 4–6. The parties used a uniform Calculation and Distribution Plan to determine the amount due to each Class Member. *See* Dkt. No. 7-3. Class Counsel then mailed timely notice to each Class Member summarizing the parties' preliminary calculation of the Class Member's day count based on available records. Dkt. No. 7 at 10–11. This notice contained detailed instructions on the method and deadline for disputing day counts. Dkt. No. 24-2 at 3, 6–7; Dkt. No. 24-3 at 3, 6–7. The parties adhered to the procedure for resolving day count disputes set forth in the Settlement Agreement. *See* Dkt. No. 24-5. And finally, the timeline set forth in the Settlement Agreement requires King County to submit payment of the total settlement amount to Class Counsel within 10 business days of the Court's final approval. Dkt. No. 7-1 at 11. Class Counsel—the settlement administrator—anticipates distributing payment within six months of the Court's final approval. Dkt. No. 23 at 19.

29.     The Court finds that the relief provided for the Class is adequate considering the terms of the attorney fees award, including the timing of payment. Fed. R. Civ. P. 23(e)(2)(C)(iii). The attorney fees here are reasonable because they (1) are not the product of collusion and (2) have been calculated using an acceptable method. *See* Fed. R. Civ P. 23(h) ("[T]he court may award reasonable attorney's fees and nontaxable costs[.]").

30.     As for collusion, the Court carefully scrutinized the attorney fees award for "subtle signs" that Class Counsel "allowed pursuit of their own self-interests . . . to infect negotiations." *Bluetooth*, 654 F.3d at 947; *Briseño*, 998 F.3d at 1023 ("In reviewing settlements struck before class certification, district courts must apply these so-called *Bluetooth* factors to

ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEY FEES, AND COSTS - 8

1  smoke out potential collusion."). The Court, as noted above, finds no evidence that Class

2  Counsel colluded with defense counsel to reach an unfair settlement, collect a windfall, or

3  otherwise advance their personal financial interests.

4       31.     First, Class Counsel will not receive a disproportionate distribution of the

5  settlement while the Class receives no monetary distribution. *Bluetooth*, 654 F.3d at 947. The

6  "benchmark" in the Ninth Circuit and Washington is 25% of the Class's total recovery, which

7  here would be approximately $339,000. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*,

8  904 F.2d 1301, 1311 (9th Cir. 1990) (25% is the "benchmark" award in common-fund cases);

9  *Bowles v. Washington Dep't of Ret. Sys.*, 847 P.2d 440, 450 (Wash. 1993) (benchmark in

10 common-fund cases is 25% of recovery obtained, with 20-30% as the usual range). Indeed, Class

11 Counsel's $50,000 fee award amounts to a paltry 3.7% of the total settlement amount.

12      32.     Second, although the Settlement Agreement contains a "clear sailing" provision,

13 *see* Dkt. No. 7-1 at 7, Class Counsel's minimal fees eliminate any danger that they accepted a

14 low-ball settlement in exchange for an excessive award or otherwise "bargained away something

15 of value to the class." *See Bluetooth*, 654 F.3d at 948 ("[W]hen confronted with a clear sailing

16 provision, the district court has a heightened duty to . . . scrutinize closely the relationship

17 between attorneys' fees and the benefit to the class, being careful to avoid awarding

18 'unreasonably high' fees simply because they are uncontested." (quoting *Staton v. Boeing Co.*,

19 327 F.3d 938, 954 (9th Cir. 2003))). Clear sailing provisions are not per se prohibited, *Bluetooth*,

20 654 F.3d at 949, and the agreed-upon fees are not unreasonably high.

21      33.     And last, the Settlement Agreement does not contain a "kicker" or "reverter"

22 clause that returns reduced or unawarded attorney fees to King County. *Bluetooth*, 654 F.3d at

23 947. *See, e.g.*, *Briseño*, 998 F.3d at 1027 (settlement agreement contained reversion clause "in

24 which [the defendant], not the class members, receive[d] the remaining funds if the court

ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEY FEES, AND COSTS - 9

reduce[d] the agreed-upon attorneys' fees."). It does, however, contain a provision that entitles King County to the funds of any individuals who opt out. Dkt. No. 7-1 at 10. The parties similarly agreed to return to King County any undistributed or unclaimed settlement funds. Dkt. No. 7-1 at 12. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th 2018) ("A 'kicker' or reversion clause directs unclaimed portions of a settlement fund . . . to be paid back to the defendants."). As noted above, no Class Members opted out of the settlement. Dkt. No. 24 at 5. And only two Class Members missed the November 13, 2021 deadline to submit Compensatory Day claims. *Id*. at 4. These Class Members were entitled to a combined total of three Compensatory Days, meaning that their failure to timely submit a claim resulted in $1,500 reverting to King County. *Id*. This is insufficient to render the Settlement Agreement collusive. *See, e.g.*, *In re Volkswagen*, 895 F.3d at 612 ("[T]he actual trend in class member participation . . . inidicate[s] that the reversion clause did not, in design or in effect, allow [Defendant] to recoup a large fraction of the funding pool.").

34. The Court finds that Class Counsel's fee award is appropriate under the "lodestar" and "percentage-of-recovery" methods. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (en banc). The Court has discretion to rely on either method where, as here, the settlement produces a common fund for the benefit of the entire class. *Bluetooth*, 654 F.3d at 942; *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016) ("A 'common fund' exists when 'each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgement[.]'" (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980))). *See also Johnson v. MGM Holdings, Inc.*, 943 F.3d 1239, 1242 (9th Cir. 2019) ("We encourage district courts to cross-check their attorneys' fee awards using a second method of fee calculation.").

35. Under the lodestar method, the Court multiplies the hours the prevailing party

reasonably expended by a reasonable hourly rate. *Bluetooth*, 654 F.3d at 941. The Court can then adjust this figure up or down based on several factors, "including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment," *Hyundai*, 926 F.3d at 570, although the benefit obtained by the class is "[f]oremost among these considerations," *Bluetooth*, 654 F.3d at 942. At the fairness hearing, Class Counsel estimated that they have expended 1,205 hours on this case. *See also* Dkt. No. 19 at 5–6; Dkt. No. 20 at 2. Even if both attorneys requested fees for $250 per hour—the lowest rate at Columbia Legal Services—that total ($301,250) far exceeds the agreed-upon fees. *See In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 929 (9th Cir. 2020) ("[T]he district court must provide a concise but clear explanation of its reasons for the fee award." (cleaned up)).

36. Under the percentage-of-recovery method, the Court "simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 546 U.S. 338 (2011). As discussed above, the benchmark in the Ninth Circuit is 25%, and the agreed-upon attorney fees are far less than the $339,000 Class Counsel would collect under this method. *See Optical Disk*, 959 F.3d at 929.

37. The Court finds that the relief provided for the Class is adequate considering any agreement required to be identified under Federal Rule of Civil Procedure 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv). The parties have identified their initial tolling agreement and all subsequent amendments to that agreement. There are no other agreements made in connection with the Settlement Agreement.

38. The Court finds that the Settlement Agreement treats all Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). Again, each Class Member will receive $500

ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEY FEES, AND COSTS - 11

per Compensable Day. Dkt. No. 7-1 at 6; Dkt. No. 23 at 20–21. There are no evaluative criteria that apply to certain Class Members but not others. Rather, the parties used a uniform Calculation and Distribution Plan to determine the amount due to each Class Member. *See* Dkt. No. 7-3.

39. The Court further finds that the Settlement Agreement is "fair, reasonable, and adequate" considering the (1) strength of Plaintiffs' case; (2) risk, expense, complexity, and likely duration of additional litigation; (3) risk of maintaining class action status throughout trial; (4) settlement amount; (5) extent of discovery completed and the stage of the proceedings; (6) experience and opinions of counsel; (7) presence of a governmental participant; and (8) reaction of Class Members to the settlement amount. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575–76 (9th Cir. 2004). Although many of these factors "fall within the ambit of the revised Rule 23(e)," *Briseño*, 998 F.3d at 1026, the Court considered them in addition to Rule 23(e)(2)'s express requirements.[1]

**ORDER**

1. Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement is GRANTED. The terms of the parties' Settlement Agreement, Dkt. No. 7-1, are hereby fully

---

[1] Prior to its 2018 amendment, Rule 23(e)(2) did not set forth specific criteria for determining whether a settlement is "fair, reasonable, and adequate." The Ninth Circuit for years "filled in the gaps" by devising what are variously referred to as "*Churchill* factors," "*Hanlon* factors," or "*Staton* factors." *Briseño*, 998 F.3d at 1023. It remains unclear whether or to what extent Rule 23(e)(2)'s amendment supplanted the *Churchill* factors. For example, decisions postdating the amendment refer to Rule 23(e)(2) as "Congress' 2018 codification of a new multifactor test," *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019), and "new instructions" that require district courts "to go beyond" precedent, *Briseño*, 998 F.3d at 1026. In at least one decision, however, the Ninth Circuit implied that a district court must still consider the eight *Churchill* factors. *See Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) ("Only when the district court 'explore[s] these factors comprehensively' can the settlement award 'survive appellate review.'" (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)) (alterations in original)). Here, the Court treats the *Churchill* factors as optional guideposts that may be applied in addition to Rule 23(e)(2)'s express requirements. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (a district court "may consider some or all" of the *Churchill* factors); Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("[t]he goal of this amendment is not to displace" any of the factors historically considered in assessing settlement fairness, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal").

incorporated as though set forth in this Order.

2. Plaintiffs' Motion for Approval of Attorneys' Fees and Costs is GRANTED.

3. Defendant King County is ORDERED to pay $1,357,665 to the Class, which Class Counsel will distribute to Class Members in accordance with the Settlement Agreement.

4. Defendant King County is ORDERED to pay $50,000 in reasonable attorney fees and costs to Columbia Legal Services.

5. The settlement amount is ORDERED to be paid and distributed as set forth in the Settlement Agreement.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 18th day of January, 2022.

*Lauren King*

Lauren King
United States District Judge